UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| MARTHA LOUISE WILSON, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 08-311-ART |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | **MEMORANDUM OPINION** |
| Commissioner of Social Security, | ) | **& ORDER** |
| | ) | |
| Defendant. | ) | |
| | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on the cross-motions for summary judgment filed by Plaintiff Martha Louise Wilson, R. 12, and Defendant Michael Astrue, Commissioner of Social Security, R. 14. For the reasons given below, the Court will deny Plaintiff's Motion for Summary Judgment and grant Defendant's Motion for Summary Judgment.

I.   **BACKGROUND**

Wilson filed an application for disability insurance benefits on February 21, 2006. Adm. R. at 91-96. Wilson alleged a disability beginning May 10, 2004. *Id.* at 91. Her claim was denied initially, and again on reconsideration. *See* R. 12 (indicating the claim was denied initially on December 1, 2006, and on reconsideration on February 21, 2007).

Dr. Rhonda Sivley, Wilson's primary care physician, treated Wilson for anxiety, depression, and back pain beginning in 2004. Adm. R. at 38-39. According to Wilson, she was never hospitalized for any mental health reason. *Id*. at 39. Dr. Sivley prescribed the medications Zoloft and Klonopin for Wilson for her "panic attacks" and "bout with depression." *Id*. However, Dr.

Sivley advised that she see a specialist for mental health treatment at "Comp Care," but when Wilson arrived at the facility she was "shaking and crying" and "had to turn around and go back home." *Id*. This incident occurred after Wilson's mother's death. *Id.* at 39-40. Wilson explained that her mother's illness "brought on a lot of depression" and she "couldn't handle her [mother's] sickness." *Id*. at 42-43. However, at a December 2004 visit to Dr. Sivley, Wilson denied having an anxious mood. Adm. R. at 322. Dr. Sivley concluded that Wilson suffered from "situational stress" that would "improve in the near future." *Id*. at 324.

On July 21, 2006, consultative examiner Dr. Robert Spangler evaluated Wilson. Adm. R. at 213-218. He diagnosed her with a history of anxiety disorder and "panic disorder with agoraphobia, and grief." *Id*. at 216. He opined that she probably "cannot complete a normal workday," and her work related activities were limited "due to long-term memory impairment" and "social interaction is limited due to panic disorder with agoraphobia." *Id*. at 217. In addition, he recommended that she receive regular mental health treatment. *Id*. A few months later, on October 21, 2006, Dr. Spangler again examined Wilson. Adm. R. at 246-51. At this exam, he diagnosed her with panic disorder without agoraphobia. *Id.* at 249. Again, he found that Wilson could not complete a normal workday and recommended regular mental health treatment at Comp Care. *Id*. at 250.

Dr. Syed Raza also evaluated Wilson on November 11, 2006, for a psychiatric consultative examination. Adm. R. 252-56 (Exhibit 15F). Dr. Raza noted a history of "depression and anxiety, unresolved grief about mother's death." *Id.* at 253. In addition, he noted Wilson "does not follow up with any qualified mental health professional for medication managements or for counseling sessions" and did not require "psychiatric hospitalization." *Id.* According to Dr. Raza's report,

Wilson "stopped working due to mother's illness." *Id*. at 254. With regard to Wilson's social interaction, Dr. Raza reported that Wilson had a "good ability to relate to others." *Id*. Dr. Raza's diagnosis included "panic disorder with agoraphobia," and "bereavement disorder" with a Global Assessment of Functioning (GAF) score of 65-70. *Id*. at 255. Although he concluded her prognosis was "guarded," he found that Wilson had "fair social interactions with friends, supervisors, and public" and her panic disorder and bereavement were "managed" by medications prescribed by her primary care physician. *Id*. at 255.

At Wilson's request, an administrative hearing was held before an Administrative Law Judge (ALJ) on November 28, 2007. Adm. R. at 32-66 (hearing transcript). Wilson testified that she was previously employed by a dry cleaner, but that she stopped working because her back pain was "unbearable" and she had difficulty being around people. *Id.* at 37-38. She also testified that she spent a significant amount of time caring for her mother and that her mother's illness "brought on a lot of depression." *Id.* at 42. According to Wilson, she suffered from anxiety and a "fear of being in public." *Id*. at 44. However, when questioned by the ALJ regarding this fear Wilson admitted that she was "scared at times, not all the time." *Id*. She also claimed to still be grieving for her mother, but had failed to seek any type of grief counseling. *Id.* at 45. In addition, she claimed multiple other ailments including back and shoulder pain and difficulty lifting anything over five to seven pounds, difficulty standing or sitting for long periods, and restless leg syndrome *Id*. at 52, 53, 57. Wilson reported that she had never seen a specialist for her alleged back pain but that she was currently taking prescribed medication–Darvocet–for her back pain. *Id*. at 43-44.

Vocational expert Dr. James Miller also appeared and testified at this hearing. *Id*. at 58-66. In response to the hypothetical questions posed with the various restrictions described therein, he

testified that there were a number of jobs that Wilson could perform including messenger, food preparation worker and food server. *Id.* at 61.

Thereafter, the ALJ denied Wilson's claims on March 24, 2008. *See* Adm. R. at 12-19. The ALJ concluded that from May 10, 2004, Wilson was not disabled and thus was not eligible for disability insurance benefits. *Id.* at 12. The Appeals Council denied Wilson's request for review of the ALJ's decision, *id.* at 1, at which point the ALJ's decision became the Commissioner of Social Security's final decision. *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

## II.   SOCIAL SECURITY REVIEW PROCESS AND THE ALJ'S DECISION

A claimant can receive benefits only if she is deemed "disabled" under the Social Security Act. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001) (citing 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A)(1988)). "A claimant qualifies as disabled if she cannot, in light of her age, education, and work experience, 'engage in any other kind of substantial gainful work which exists in the national economy.'" *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) (en banc) (quoting 42 U.S.C. § 423(d)(2)(A)).

To identify claimants who fit within this definition of disability, the Social Security Administration (SSA) uses a five-step "sequential evaluation process." 20 C.F.R § 404.1520(a)(4); *see Combs*, 459 F.3d at 642. Step one examines the work activity of the claimant to determine whether she is engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4). Step two is a determination of whether the claimant has a medically determinable "severe impairment" or combination of impairments that qualify as severe. *Id.* Step three determines whether the claimant's impairments meet the criteria set forth in the regulations to categorize an individual as "disabled." *Id*. The fourth step examines whether the claimant retains any "residual functional capacity" and

4

whether the claimant can return to her past relevant work. *Id*. Finally, if the claimant is unable to return to any past relevant work, it must be determined whether she has the residual functioning capacity to do any other work. *Id*. The claimant bears the burden through the first four steps, but the burden shifts to the SSA at the fifth step. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

In this case, the ALJ performed the requisite five-step process to evaluate Wilson's claims. First, the ALJ found that Wilson had not engaged in substantial gainful activity since May 10, 2004, the alleged onset date. *See* Adm. R. at 14. At step two, the ALJ determined that Wilson had the following impairments: "cervical spondylosis; history of right shoulder bursitis; anxiety disorder." *Id.* at 14. At step three, the ALJ concluded that this impairment or combination of impairments did not meet or medically equal an impairment on the SSA's list of impairments. *Id.* at 16. At step four, the ALJ evaluated Wilson's residual functional capacity and found that she could perform light work as defined in 20 C.F.R. 404.1567(b) with some limitations. *Id.* at 16. The ALJ then proceeded to the fifth and final step and determined that Wilson was unable to perform any past relevant work, but "considering the claimant's age, education, work experience, and residual functional capacity" concluded that "there are jobs that exist in significant numbers in the national economy that the claimant can perform." *Id.* at 18. Therefore, the ALJ determined that Wilson was not disabled. *Id.* at 19.

**III.   STANDARD OF REVIEW**

Judicial review of the Commissioner's decision is restricted "to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (citing 42 U.S.C. § 405(g), and *Cutlip v.*

*Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). Substantial evidence means "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Cutlip*, 25 F.3d at 286).

In determining the existence of substantial evidence, courts must examine the record as a whole. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc). If the Commissioner's decision is supported by substantial evidence, this Court must affirm that decision even if there is substantial evidence in the record that supports an opposite conclusion. *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007) (quoting *Longworth v. Comm'r of Soc. Sec. Admin.*, 402 F.3d 591, 595 (6th Cir. 2005)). Further, when reviewing the Commissioner's decision, the Court cannot "try the case de novo, resolve conflicts in the evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007) (citing *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001)).

**IV.  ANALYSIS**

Wilson's sole challenge on appeal is that the ALJ's decision in step four of his analysis—that she had the residual functional capacity to perform "light work"—is not supported by substantial evidence. R. 12 at 5-6. In making this challenge, Wilson contends that the ALJ improperly rejected the testimony of consultative examiner, Dr. Robert Spangler who determined that because of her mental health problems she could not complete a normal workday. *Id.* at 5.

In step four of the analysis, the ALJ opined:

> [Wilson] is limited to work that requires no more than occasional climbing, stooping, kneeling, crawling, balancing and crouching. The claimant can perform no overhead motions. Based on mental impairments, the claimant required low stress work that

involves no production rate or quota work. She must avoid exposure to the general public.

Adm. R. at 16.

In this case, the ALJ noted that his assessments were consistent with the state agency reviewing physicians who opined the claimant had "moderate limitations in her ability to perform the mental aspects of work activity." Adm. R. at 17. The ALJ's decision, however, reveals that he considered all of the medical evidence in the record. For example, the ALJ considered Dr. Spangler's opinion, and explained why he gave it little weight:

> "I do not accept the severity of functional restriction espoused by Dr. Spangler. It appears that Dr. Spangler based his opinions primarily on subjective statements of the claimant including her medical history . . . the claimant is a poor historian and provided numerous inconsistent statements regarding the nature and extent of her impairments."

Adm. R. at 17. Nonetheless, the ALJ concluded that the record as a whole, including his evaluation of Dr. Spangler's findings, established that the claimant had the residual functional capacity to perform "light work" with some limitations. As discussed below, substantial evidence supports the ALJ's conclusion.

Dr. Raza evaluated Wilson on November 11, 2006, just one month after Dr. Spangler's examination. Although Dr. Raza stated Wilson's "prognosis is guarded" and that she suffered from "bereavement disorder," he did not express any significant work limitations with regard to Wilson or any significant social impairment. Adm. R. at 254-55. Rather, according to Dr. Raza's report Wilson "stopped working due to mother's illness." *Id*. at 254. In fact, Dr. Raza reported that Wilson had a "good ability to relate to others." *Id*. Further, he found that Wilson had "fair social interactions with friends, supervisors, and public" and her panic disorder and bereavement were "managed" by

7

medications prescribed by her primary care physician. *Id*. at 255.

The findings of Dr. Sivley, Wilson's primary care physician, also provide substantial evidence to support the ALJ's decision. In 2004, Dr. Sivley treated Wilson for "a mild degree of depression"and noted that her symptoms occur "intermittently." Adm. R. at 319. At a December 2004 visit, Wilson denied having an anxious mood, and Dr. Sivley concluded that Wilson suffered from "situational stress" that would "improve in the near future." *Id*. at 322, 324. No further records exist regarding any treatment for Wilson's depression by Dr. Sivley after this time in 2004.

The opinions from state agency non-examining physicians also support the ALJ's determination. Both Dr. Stodola and Dr. Perritt found that Wilson was only "moderately limited" in her ability to complete a normal workday and workweek. *See* Adm. R. at 272 (Dr. Stodola); 348 (Dr. Perritt). Dr. Stodola further opined that Wilson was able to "socialize without marked mental limitations" and concluded that she was mentally able to "understand/remember/carry out simple instructions for 2 hr segments over an 8 hr workday, 5 days per week." Adm. R. at 273.

Moreover, the Plaintiff's own testimony is inconsistent with her assertions of her limitations. The ALJ can consider daily activities in assessing the claimant's credibility. *See* 20 C.F.R. § 404.1529(c)(3)(i); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 532 (6th Cir. 1997) ("An ALJ may consider household and social activities engaged in by the claimant in evaluating a claimant's assertions of pain or ailments"). In March 2006, approximately four months prior to her consultative examination with Dr. Spangler, Wilson in a written report stated her daily activities included, "have coffee in morning with husband, feed pets, clean house, iron or mend clothes. Phone family to check on mother. Prepare meals. Clean Kitchen, bathe get ready for bed." Adm. R. at 115. Further, she reported no problem with personal care, and she is able to perform daily household chores and light

8

outdoor chores. *Id.* at 117. Although she reported she did not engage in social activities, she stated that she was able to do weekly shopping, visit the doctor, and engage in phone conversations. *Id.* at 119-20. Wilson's ability to engage in these activities is not consistent with her assertions regarding the severity of her anxiety and "fear of being in public." *See* Adm. R. at 44.

At the time of the hearing, Wilson admitted that she had not seen a specialist for her mental health problems. Adm. R. at 43-45. She admitted that she was still grieving over her mother's death but that she had received no counseling for her grief. *Id*. at 45. The ALJ has the duty to "weigh all of the evidence" and resolve any "significant conflicts" in the record. *Walters*, 127 F.3d at 531. The ALJ determined that Wilson was not credible and that "based on the longitudinal medical evidence it appears the claimant exaggerates her symptoms." Adm. R. at 17. An ALJ's credibility determinations are entitled to great deference "particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters*, 127 F3d at 531.

Other than Dr. Spangler's isolated opinion regarding Wilson's mental health, the objective medical evidence does not support Wilson's assertions regarding the severity of her depression and mental health problems. Moreover, her symptoms appeared to be effectively managed by her prescribed medications. Therefore, substantial evidence supports the ALJ's conclusion in step four of the analysis that Wilson had the residual functional capacity to perform "light work" with some limitations, as described by the ALJ.

Wilson also makes a cursory argument, without any explanation or facts in support, that the ALJ "failed to adequately assess Ms. Wilson's chronic pain caused by her degenerative disc disease and bursitis." R. 12 at 6. Courts need not address arguments that are not fully briefed. *See Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 490-91 (6th Cir. 2007)(finding appellant's failure to develop

argument or "identify any specific aspects of the Commissioner's determination that lack support in the record" waived argument on appeal). However, even assuming this issue were properly before the Court it is without merit.

In making his determination, the ALJ explained that he relied on the opinions of Dr. Mengesha and Dr. Raza.[1] *See* Adm. R. at 17. Dr. Mengesha evaluated Wilson on May 13, 2006, and determined that although she suffered from "mild degenerative disk disease" she was not "impaired from this." Adm. R. at 204. With regard to her bursitis, Dr. Mengesha noted that her physical examination "was essentially normal." *Id.* In addition, Dr. Bazzi found that Wilson suffered from bursitis in a November 4, 2005 exam, but found it to be "very mild" and recommended treatment of "warm compressors" and "anti-inflammatory medications." Adm. R. at 172. Thus, evidence in the record supports the ALJ's determinations that Wilson was able to perform "light work" despite her back pain and bursitis.

Moreover, the ALJ, after considering all of the medical evidence, did in fact place restrictions that would accommodate her back pain and bursitis, on Wilson's residual functional capacity to perform "light work." Indeed, the ALJ stated that she is limited to work that requires "no more than occasional climbing, stooping, kneeling, crawling, balancing and crouching." Adm. R. at 16. Further, he found "[t]he claimant can perform no overhead motions." *Id.* Thus, the ALJ did in fact consider and account for her symptoms.

After reviewing the record as a whole, substantial evidence supports the ALJ's decision that

---

[1] The ALJ indicates he relied on Dr. Raza's opinion in making his determination with regard to Wilson's back pain and bursitis, Adm. R. at 17. However, the citation in the record the ALJ points to, Exhibit 2F, reflects a report by physician Dr. Jamal Bazzi rather than Dr. Raza. *See id*. at 172-73 (Exhibit 2F).

Wilson is not disabled within the meaning of the Social Security Act. Therefore, because substantial evidence exists supporting the ALJ's decision, the ALJ's decision regarding Wilson's claims for disability and disability insurance benefits must stand.

V.  **CONCLUSION**

For the reasons given above, it is **ORDERED** as follows:

(1) Plaintiff's Motion for Summary Judgment, R. 12, is **DENIED.**

(2) Defendant's Motion for Summary Judgment, R. 14, is **GRANTED**.

(3) Judgment will be entered consistent with this Memorandum Opinion and Order.

This the 14th day of May, 2009.

Signed By:
*Amul R. Thapar* AT
United States District Judge

11